## Garrit Post and James La Rue *against* John Neafie.

Debt will lie      THIS was an action of debt upon a decree pronounced by the
on a decree of a
court of chan- court of chancery for the state of *New-Jersey*, where, by a law
cery in a sister passed on the 13th of *June* 1799, it is thus enacted. " That when
state if it be
simply for the " any cause shall be finally determined in the court of chancery,*
payment of a " the clerk of the court shall enter together, in order, the bill, an-
sum of money
by the defend- " swer, pleadings, reports, decretal orders and decree in such
ant, without " cause, in a book to be kept for that purpose, which shall be
any acts to be
done by the " signed by the chancellor, as of the day on which such decree

* Sect. 45.

NEW-YORK.
May, 1805.

Garrit Post &
James La Rue.
v.
John Neafie.

" was pronounced, but such decree shall not contain any recital " of the bill, &c."

" *That the decree of the court of chancery shall, from the time " of its being signed, have the force, operation and effect of a " judgment at law in the supreme court of this state, from the " time of the actual entry of such judgment." By a subsequent clause when a defendant shall not comply with a decree made, the court may compel performance by sequestration, *fieri facias*, or *capias ad satisfaciendum*. On the trial, which was before *Livingston*, J. at the *New-York* sittings in *July* 1785, these appeared to be the circumstances of the case.

The defendant having an estate under mortgage to the commissioners of the loan office, sold it to *Post*, and covenanted to pay off the incumbrance. This not being done, the premises were put up to sale at public auction by the commissioners from whom *La Rue* purchased it, received a conveyance, and brought an ejectment against *Post*. He, being thus sued, instituted an action of covenant against *Neafie*, for not exonerating the estate ; upon which *Neafie* filed his bill, alleging a confederacy to oppress and defraud him. When the cause was set down for hearing, the parties came to a compromise, by which they agreed that *Neafie* should, within a fortnight, repay *La Rue* the amount of his purchase money with interest ; pay all the taxed costs in chancery, and in the two suits between himself and *Post*, and between *Post* and *La Rue*, and also all the fees paid, or engaged to be paid by *Post* and *La Rue* to their solicitors and counsel ; that *Neafie's* wife should execute and acknowledge the conveyance to *Post*, and *La Rue* and his wife, execute to him, a release and quit claim, in consequence of which the two suits at law should be discontinued and the bill in chancery dismissed. *Neafie* however, not complying with these terms, an interlocutory order was made to the same effect, referring it to a Master to state the several sums due, and he, having ascertained their respective amounts, gave in his report specifying the quantum due to each of the defendants in his own right, and the amount of the whole together. Upon this report the chancellor founded his decree, thereby ordering the matters and things, contained in the order and report, to be performed " according to the tenor and true meaning thereof," and that *Neafie* should pay the plaintiffs the sum for which they now proceeded. To establish their right to recover, they gave

*The marginal headnote:* plaintiff. And if the decree be for the payment of one gross sum to several persons, though their proportions be previously specified, the action may be joint, and is the most appropriate form *ut semb.*

* Sect. 46.

NEW-YORK,
May, 1805.

Gerrit Post &
James La Rue
v.
John Neafie.

in evidence, an exemplification of the decree and· proceedings duly authenticated, and offered to prove the seal and signatures, but they did not shew that this decree had been entered in the book prescribed by the 45th section of the act of *June* 1779, any further than it appeared from the cerfiticates authenticating the exemplification, nor did they adduce any testimony to evince the effect of a judgment in the supreme court of *New-Jersey.* Upon this the defendant moved for a nonsuit on the following grounds. 1st, That debt will not lie on a decree of a court of equity. 2d, That if in any·case it can be maintained, it must be on a decree for payment of a specific sum of money alone, without any act to be done by the other side. 3d, That if such an action can be supported, where any acts are to be performed by the other side, all such acts must, for the ends of justice, be considered as conditions precedent. 4th, That the present plaintiffs, from their own shewing could not join, the sum, for which the action was brought, being an aggregate of several parts due in different rights.—The judge having over-ruled these objections charged for the plaintiffs, in favor of whom a· verdict was rendered, to set aside which, the defendant applied on the same reasons as those urged for a nonsuit.

*Hopkins* for the defendant. On the first point it may perhaps be sufficient to remark, that no example is to be found in the history of the law, of any such action being maintained. I assume it therefore, as a position, that none has ever been brought. If so, then I shall think the remark of *Lord Coke* may well be applied, " that if an act never has been done, it is a reason why it never " should be done." This, it is true, is a proposition susceptible of some qualification. For, if a new injury or case should arise, some special action should never be wanting. The *dictum* therefore must be applied only to cases which have happened. Now then is this a new case? If not, it would long since have been resorted to as a means to obviate the objection against the court of chancery, that it was so feeble it could not enforce its own decrees. The want then of an example is enough to shew it could not be done; for it has always been convenient and desirable that such a procedure should have been adopted. But that it could not, seems to have been strongly intimated by this court in the case of *Phelps* v. *Bryant*, where, in an action on a decree made in *Connecticut*, the bench asked the counsel if a bill in chancery was not the proper remedy? And though the decision turned on

tion, is certainly in favor of our position. As however there is no express determination on the matter, we may be allowed to investigate it on principle, and see how far such an action can be warranted. Against it, there seems a reason that is incontrovertible, arising from the nature of the court and system of our law. The rule of procedure in the latter is *secundum legem et consuetudinem terræ;* that of the former *secundum æquum et bonum.* The principles, therefore, on which a decree may be founded, are not such as would authorize a judgment, and consequently a decree cannot raise any presumption of a legal demand. Nay, the very reason for going into equity is, that the party is remediless at law. The decree does not alter the nature of the claim. It still remains a mere equity, and a mere equity is not a ground of action. *Litt. Sec.* 332. 2 *Wils.* 86.* It only shews there was an original equity, authorizing a recurrence to chancery, in which court the decree ought to be enforced. But, allowing the suit to be maintainable, it ought to be only for payment of a specific sum without any acts to be done by the plaintiff. Otherwise, where a sum is ordered to be paid to one party, and he decreed to do certain things, he may resort to a court of common law for the money, produce his decree, without ever shewing performance, and ensure a recovery. If however the court should think such a suit as the present may be brought, though the decree contain acts to be done by the plaintiff, then it is presumed such acts ought, in the particular case, to be deemed conditions precedent, though strictly and technically speaking they may be independent. This is necessary, because the court cannot annex any conditions to the decree. For the equitable considerations on which it was founded, cannot be exercised by a court of law. The case affords no evidence that the plaintiffs had performed the acts by them to be done.

LIVINGSTON J. I tried the cause, and refused to nonsuit the plaintiffs because there was a decree ordering only the payment of a sum of money.

*Hopkins.* I shall shew that the decree notices other papers and proceedings, ordering various acts. The interlocutory order and report contain reciprocal acts to be done, and the decree refers to them. The manner in which it is drawn up, omitting those things, does not make them the less a part of the decree, and in enforcing it they ought to be regarded. They should then have been averred. The mere averrment that the money is

NEW-YORK,
May, 1805.

Garrit Post &
James La Rue
v.
John Neafie.

*Preston* v.
*Christmas.* In
which it was
decided, that
as an equity of
redemption
was a legal non-
entity, it could
not be pleaded
by way of accord
and satisfaction
in debt on a
bond. But
*quere* how this
case will stand
with the decision in *Waters
and others* v.
*Stewart,* 1
*Caines' Ca.* in
*Err.* 47.

D

NEW-YORK,
May 1805.

Garrit Post &
James La Rue
v.
John Neafie.

due and owing, is not sufficient. Besides, the decree, as it is called, is not a final one. It does not appear it was entered in the book required by law. It leaves the matter again to be litigated. A cross bill must be filed to get at the defendant's rights. Therefore, allowing an action to be maintainable on a decree, it cannot be so on this, which is not final. This will be more evident if we consider there are acts prescribed to be done by the defendant. You cannot split the decree and sue for a part; go for the money, and not for the acts. By this mode we may be sued for the debt at law, and called on for performance in chancery. This would be multiplying suits, in contradiction to all rule. Another argument against the plaintiffs is, that the money is due in different rights; a portion to *Post*, and a portion to *La Rue*.

*D. B. Ogden*, contra. It is a universal principle that debt can be maintained on any judgment of a court of record. Therefore I shall establish that a court of chancery is such a court. *Doct. & Stud.* 19, in enumerating the courts of record, mentions chancery as one. So 3 *Black. Comm.* 24, defines a court of record to be " a court where the judicial acts and proceedings, are " enrolled in parchment for a perpetual memorial and testimony." If from principle it can be evinced that this action will lie, it is not necessary to shew a precedent. But even the test required is not wanting. In 7 *Went. Plead.* 95, a declaration on a decree in chancery will be found.

* 428 of the 8th edition by Parker.

† As to personal estate.

‡ *Martin* v. *Martin*.

§ *Mason* v. *Williams*.
* See *Hitchcock* & *Fitch* v. *Aicken*, 1 vol. 460.

It is declared, 1 *Har. Ch. Prac.* 636* that a decree is of the same force and effect as a judgment.† So 1 *Vez.* 214‡. 2 *Salk.* 507§. Allowing the court of chancery in *England* not to be a court of record, that of *New-Jersey* is, by the express words of the statute referred to in the case. But whether it be so or not, is immaterial to the question. It is settled that judgments in other states are no more than foreign judgments.* By the common law no court out of *England* is a court of record. For in actions on judgments in a court of record the plaintiff must declare *prout patet per recordum*; the trial is by inspection, and the record conclusive. But in an action founded on a judgment of a foreign court, the declaration need not be in that form, the cause is tried as other issues, and the judgment only *prima facie* evidence of the debt. The difference between actions on domestic, and those on foreign judgments, is still more evident, when we consider that on the first, debt alone can be maintained; on the latter, *assumpsit* will lie. Then as the

present is a foreign judgment, on which *indebitatus assumpsit* may be brought, and as wherever that action can be supported, debt may be resorted to, this suit is properly instituted, not on the judgment *eo nomine*, but on the debt created by that judgment. For the law implies a promise by every man, to satisfy whatever the law of the land orders him to pay. Still more so when the party against whom it is given, is the very person at whose suit it is pronounced. Whether the decree be final or not is a question for the court in *New Jersey.* This, the Chancellor of that state has determined by affording his signature in conformity to the act referred to in the case. The point then is settled by a court of competent and exclusive jurisdiction, therefore not examinable here. By this the sum due is joint. It is said, and truly said by the defendant, that the suit must be on the final decree. By this it is made a gross debt, of which the plaintiffs are tenants in common. The interlocutory order merely settles the several interests of the joint proprietors. If the defendant has a right to demand certain acts from the plaintiff, he has his remedy for non-compliance. Therefore, as the suit is on the debt arising from an implied promise, of which the judgment is only evidence; as by the decree a joint demand is created, and the defendant may have redress at law for non-performance on our side, the action is well brought.

NEW-YORK, May, 1805.

Garrit Post & James La Rue v. John Neafie.

*Hopkins* in reply. Though it be a settled rule that debt will lie on the judgment of a court of record, the position is true only with relation to such courts as were so, when the principle was adopted. We must then consider what was the nature of those courts, and the proceedings in them. If any should now be erected into courts of record, which do not correspond with those previous to the rule, the principle will not apply. This brings me back to what I set out with, that a mere equity, the subject of a decree, is not a ground of action at law. The quotation from *Har. Ch. Prac.* means no more, than that in settling incumbrances on property, chancery will consider a decree, as giving a lien equal to that of a judgment at law. Nor does the precedent cited make against my position. The English chancery has two courts. That of equity and the petty bag. The latter proceeds according to common law, and the pleadings in *Wentworth* might have been on a decree rendered there. The final decree, as it is termed, cannot make that a joint interest, which at law is separate.

SPENCER, J. The counsel for the defendant has argued, 1st. That this was not a final decree, but a mere interlocutory order in its na-

NEW-YORK,
  May 1805.

Garrit Post &
James La Rue
      v.
John Neafie.

ture, the performance of which might be compelled by process of contempt there, but which this court cannot perceive to be a judgment in the cause. 2d. That the agreement, on which the order was made, was out of the ordinary course of the powers of solicitors, and no authority appearing for making it ; as the defendant denied that it was made by his authority or permission. 3d. That it now appears by the documents produced, that the sums declared for, by the plaintiffs, if due at all, are not due to them jointly, but that a part is decreed to one of the plaintiffs, and a part to the other separately, and for causes and considerations which have no connexion with each other, and for which therefore, they cannot join. 4th. That if, in any case, this court could sustain an action upon a decree of a court of equity, it could only be on a decree for a specific sum of money merely, and not upon a decree enjoining mutual and specific performances like the present ; or if an action were to be sustained on a decree ordering mutual performances like the present, then, to effect the ends of justice, the court must consider all things which the plaintiffs are to perform, as conditions precedent, and of course, that the plaintiffs must shew the performance of them on the trial. 5th. That no action at common law will at all lie to enforce a decree of a court of equity.

The first objection is unfounded in fact. The clerk of the court of chancery has certified the decree as signed by the chancellor, and remaining of record in the office of the clerk. It purports to be a final determination of the cause, and we are to intend that it has been duly entered agreeably to the regulations of the act.

As to the second objection, it merits little consideration. Solicitors of the court of chancery, as well as attornies in courts of law, are not only responsible to their clients for betraying their trusts, but they are amenable to their respective courts in a sumary way  If this had been an action depending in a court of common law in New-Jersey, and the attorney had confessed a sum of money due to the adverse party it could never become a matter of enquiry in a suit on the judgment, whether the attorney had acted by authority. If, in this case, the defendant's solicitor was unauthorized to enter into the agreement on which the decree was ultimately founded, it was examinable only in the court having original jurisdiction. It is to be intended that the solicitor acted by the direction of his client, and for his benefit.

With respect to the third and fourth exceptions, it does appear, by an interlocutory order in the cause, that the present defendant was decreed to pay several sums of money to *La Rue* solely, and other sums of money, for costs, to *Post* and *La Rue ;* but the final decree, which is the basis of this action, adjudges and decrees all the monies to be paid by the present defendant to the present plaintiffs, without any act to be done on their part ; and thus, it turns out to be a decree for a specific sum of money, independent of any condition or precedent act to be done by the present plaintiffs. It follows, that there were no acts to be averred or proved by the plaintiffs, to entitle them to call on the defendant to perform this decree.

The last objection, that no action at common law, will at all lie to enforce a decree of a court of equity, remains to be considered.

This point has never been judicially decided ; or if it has, neither the counsel nor the court have been able to find such decision. The silence of our books on the subject, is by no means conclusive that an action at common law is not sustainable on a decree for the payment of a specific sum of money, as the present is. Principles established in analogous cases must, therefore, be resorted to, to test the question. It has been said that a court of chancery is not a court of record. This is undoubtedly correct, technically speaking. But, whether it be, or be not a court of record, by no means decides the question, that a suit may not be founded on its final decree. In *Walker* v. *Witter, Doug.* 6 Lord *Mansfield* says " The difficulty in the case had arisen from " not fixing accurately what a court of record is, in the eye of the " law ; that description is confined properly, to certain courts in " England, and their judgments cannot be controverted ; foreign " courts, and courts in England, not of record, have not that pri- " vilege." Yet, under that limitation, actions can be brought on the judgments of courts, not of record by the municipal laws of the country in which the action is instituted. The case cited establishes that where *indebitatus assumpsit* can be maintained, debt will lie ; and that *assumpsit* as well as debt can be maintained on a foreign judgment ; and I agree with *Sir William Blackstone*, that it is implied by the fundamental constitution of government, that every person is bound, and hath virtually agreed to pay, such particular sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. Whatever therefore

the laws order any one to pay, that becomes instantly a debt, which he hath before hand contracted to discharge. 3 *Black. Comm.* 160. Upon the same principle an action of debt can be maintained for a forfeiture imposed by bye-laws, and the ordinances of a corporation. The same reason applies to suits on penal statutes. In 7 *Wentworth*, 95, is a precedent of a declaration in debt in a court of common law, for a sum of money decreed by the Lord Chancellor to be due to the plaintiff, and it is attributed to Mr. *Tidd.* This is not a high authority ; because bad declarations may be drawn by eminent counsel ; but Mr. *Wentworth's* system is deservedly in high reputation.

I should incline not to maintain an action at law, on a decree of a court of chancery of another state, if by the decree mutual acts were to be performed, unless the party suing averred and proved a performance of all the acts incumbent on him to perform ; because to sustain the suit without requiring such averments and proof, would be administering justice in a very partial manner. Viewing the decree in this cause to be for the payment of a specific sum of money, unconnected with any condition, I can see no valid objection to sustaining the suit, and more especially as, in the state of *New-Jersey*, it had all the effect of a judgment of the supreme court there. In my opinion the defendant can take nothing by his motion. It may be said that agreeably to the case of *Hitchcock and Fitch* v. *Aicken*, decided in this court, the defendant might have impeached the justice of this decree, in which case this court would have to exercise a chancery jurisdiction. Suffice it to say that this objection does not exist in the present case, and that in suits here, on foreign judgments, the same difficulties might present themselves, of an examination into the local laws of a country, with whose jurisprudence we might be unacquainted. The case I have last cited does not warrant the conclusion, that where parties have had a trial in the court of a sister state on the merits of a cause, that in a suit here, on such judgments, the original ground of action may be gone into, and I cannot assent to the position that in such cases, the justice of a judgment can be impeached.

LIVINGSTON, J. The objections taken on the trial were, on the argument here, substantially reduced to the following :

1—That an action of debt will not lie on the decree of a court of equity, or at any rate, only in cases where a specified sum of money is decreed to be paid, and nothing more is ordered to be done by either party .

2—That this is not a final decree, but only an interlocutory order, and

3—That the plaintiffs had no *joint* cause of action.

The two last objections will be first disposed of.

On what pretence can this be called an interlocutory order? It has every property of one that would be deemed final in our own court of chancery. It directs how the costs of suit are to be paid, and reserves nothing for further decision. It is also signed by the chancellor, and, as it is but decent to presume he understood his duty, we must conclude it is signed, as directed by the laws of his state, after having been properly entered in a book by the clerk for that purpose.

As little weight is there, in the objection which is made to the right of the plaintiffs joining in this action. How the sum decreed to be paid is to be divided, is a matter between themselves, but that they have a right to *join* in its recovery, will be evident from a moment's attention to the decree. It directs the complainant, who is defendant here, to pay *both* of the defendants, *Post and La Rue*, who are the present plaintiffs, the several sums for which they now sue. Nor does it appear from the final decree, that this is due to them in distinct rights, or in different proportions ; and if that may be inferred from any previous proceeding in the cause, we are not bound to look into it. The Chancellor undoubtedly had a right to decree the money to be paid to them *jointly*, and having done so, they could have no other than a joint execution, nor could they have brought separate suits for it. The form of action therefore is not only right, but it is the only one which could have been adopted.

But if both these difficulties are surmounted, debt, it is said, will not lie on the decree of a court of equity. In examining this point, I shall take it for granted, as is truly the case, that this decree is for the payment of money *only*. A mere equity, it is alleged, is no ground of relief at common law, and that the objects of equitable and legal jurisdiction, being so very different, it is impossible the former can be enforced by the tribunals of the latter. This may be correct in the first instance ; but after the original ground of complaint has been litigated and *determined* in chancery, why should not its decree or judgment, if for the payment of money, be the ground of an action at law, as well as the judgment of any other court? That we have no precedent of this kind is easily accounted for. Decrees in equity

NEW-YORK,   are more generally for the performance of certain acts, to which
May, 1805.   common law courts cannot compel obedience, and therefore the
Garrit Post &   successful party can, in such cases, obtain execution, only out of
James La Rue.   the same court.   Even actions on foreign judgments are not very
v.   common; because executions are generally issued out of the courts
John Neafie.   in which they are rendered against the property or person of the
party, or proceedings are had against the bail.   No case can be
produced in which it has been decided, that a court of law will not
sustain a suit of this kind.   That these courts have been unwil-
ling to lend their aid to enforce the performance of decrees in
equity, may be conceded, but such jealous conduct neither proves
their want of right or power, nor is it deserving of imitation.
And yet, with all this hostility, for it deserves no better name,
towards a domestic tribunal, the British courts received as bind-
ing and conclusive the sentences of foreign admiralties, the judges
whereof were governed by no settled or known rules, but by in-
structions of their respective sovereigns, which fluctuated accord-
ing to the exigencies of the times, or the temper and views of
those in power.   They regarded these sentences as not only binding
the property and securing the vendee, which was right, but as
deciding in the last resort questions arising between third par-
ties, who were no parties to the suit, and whether the same
had been litigated or not, in the admiralty.   If this be law in
*Great Britain* as it certainly is, her courts of common law would
hardly say, without being very inconsistent, if the question were
fairly to arise, that they would not regard, at least as *prima facie*
evidence of a debt, a decree of the lord Chancellor for the pay-
ment of money, when both parties had been heard before him,
and no complaint was made of his decision.   Lord *Kaims* in his
principles of equity, in speaking of suits which may be sustained
on foreign decrees, makes no distinction between chancery and
common law judgments, nor is any distinction to be found in
the constitution of the United States.   Debt usually lies for a
sum due by certain and express agreement, where the *quantum* is
3 B. C. 154, 158.   fixed and specific, and does not depend upon subsequent liquida-
tion.   Now as every man is bound to pay whatever is assessed
on him by the interpretation or sentence of law, such sum when
ordered to be paid, instantly becomes a *debt* and the party has a
right to institute a second action to recover it.   If even an
amercement in a court leet or court baron, which are among the
ib. 159.   lowest order of courts, create a debt for which this action will lie,

NEW-YORK,
Mav, 1805.

Garrit Post &
James La Rue
v.
John Neafie.

it would be extraordinary indeed, if the sentence of the highest court in a state, did not raise an equal obligation, or sanction a remedy of the same kind. An obligee, who has lost his bond, may be driven into chancery to establish his demand, but when that court has decreed the obligor to pay the amount due, why should the complainant be put to the trouble of going a second time through a court of equity in another state, to recover it? What is he to do, if, as may well happen, there be no court of that kind in the state where his debtor may happen to be, or why should not a court of law pay as much respect to such a decision, which has liquidated and adjusted the demand, as to the judgment of any other court, without regard to the intermediate modes of proceeding. The one, as well as the other, furnishes abundant, and equal evidence that the sum demanded is due, and ascertained, which is all that we want to know. I doubt whether it was ever before heard, that the foreign tribunal, which is applied to for redress, must enquire into the nature of the jurisdiction, or the manner of proceeding of the court, whose judgment it is thus called on to support. Shall we refuse to sustain an action on a French judgment, because the modes of proceeding in France conform to the civil law ; or of a court in Holland, because its judicial forms may vary from our own? If the sum be adjusted by a court of competent jurisdiction, and before which both the parties have been heard, it is sufficient. Beyond this our inquiries ought not to extend. I lay no stress on the statute of *New-Jersey*, which renders a decree in chancery, of equal effect with a judgment of its supreme court ; because, for the purpose of this action, we are not bound to take notice of the manner of proceeding in a foreign court of equity, even admitting, which we do not know judicially, that they are the same as with us; it is enough that it has settled what is due from the one to the other of the parties litigant. But if I had the smallest doubt of the propriety of this suit, this statute would remove it ; for if it mean any thing, it must be, that in future, there shall be no difference in any respect between a common law judgment and a decree in equity. The difficulty which may occur, if it should be necessary on a trial to open a decree, with me creates no embarrassment. Why anticipate that a defendant will in any case be able to satisfy us that a foreign sentence or judgment ought to be opened? Notwithstanding our decision, in *Hitchcock* and *Fitch* v. *Aicken*, it will hardly be considered as a matter of course

E

NEW-YORK,
May, 1805.

Garrit Post &
James La Rue
v.
John Neafie.

to go into an examination of the original ground of controversy. When a decree is opened on the principles of this case, it will be time enough to determine whether the party can proceed at law, or shall be non-suited. This is a case after verdict, and no attempt being made, at the trial, to impeach the verity or justice of the decree, why shall we now presume, and that without any suggestion on the defendant's part, that it was in his power to have done it ?

It will be expected that we take notice of another objection which is, that something else besides the payment of money, is contained in the decree. Were that the case, it would only give rise to a question, how far the plaintiffs should aver performance of the matters directed to be done by them ? For, with such aver-ment the action might still be sustained. But it so happens, that the final decree, on which this action is brought, does not order a single thing to be done, except the payment of the two sums of money which constitute this debt. The Chancellor therefore must have been satisfied, that every thing he had previously directed the present plaintiffs to do, was performed. But if we look into the antecedent interlocutory orders, which very unne-cessarily make part of the case, and with which we have no bu-siness (for we are not sitting here as a court of appeal or re-view) we shall find that all the matters of any consequence there directed to be performed, are enjoined on the complainant himself, who is the defendant here. He is to pay the costs of a suit by *Post* in the common pleas of *Bergen*. Also the costs of an ejectment brought by *La Rue*, against *Post*, together with the fees paid by *Post* and *La Rue*, to their solicitor and coun-sel. His wife is also to execute and acknowledge a deed given by him to *Post ;* *La Rue* and his wife are then ordered (the performance of which is of no consequence to *Neafie*) to exe-cute a certain deed to *Post*. From this view of the interlocutory order it is evident, that as the non-performance of any one of these things, must either proceed from his own neglect, or be no detriment to the defendant, it would be idle to insist on an averment, that they were performed, or to consider these di-rections as a bar to the present suit.

My opinion therefore is, that the *postea* be delivered to the plaintiffs, and that the defendant take nothing by his motion.

TOMPKINS, J. I concur in the antecedent opinions, and pecu-liarly so in the present case, as I consider this, so far as it regards the plaintiffs, a decree for the payment of money only.

KENT, C. J. The judgment of the court is according to the opinions delivered, but I dissent from them. In the examination, however, of this case, I shall confine myself to a single objection made to this suit; which is, that an action of debt at law, will not lie to enforce a decree in chancery. This objection appears to me to be insurmountable and decisive. It will readily be admitted, that there are various kinds of decrees in chancery, which cannot be the ground of a suit at law. Such, for instance, as decrees for a specific performance, or those which contain multifarious matter, or involve acts and conditions to be performed by each party. But the present case is supposed to be free from any such difficulty, as it appears to be a final decree for the payment of a sum of money, without any condition or qualification annexed. The present objection, however, does not depend upon the nature of the decree in the given case, but it rests on an established rule, that a court of law will not recognise a decree in chancery as the ground of a suit, or of a plea. No instance has been shewn of such an action, and the universal silence in the books affords a a strong presumption that the action will not lie. *Litt. Sec.* 108. But there is stronger evidence of the law than that which results from the want of a precedent. It is, the settled doctrine that a decree in chancery is equal to a judgment at law, and executors and administrators, are bound equally to regard it in the distribution of assets, yet it is very clear that they cannot plead it, or give it in evidence in a suit of law, *Jones* v. *Bradshaw, cited in Ca. Temp. Talb.* 223,4. Why this is so, says *Lord Talbot*, I do not say ; but it is certain that so it has been uniformly held, and the consequence is, really, that the decrees of the court of chancery are considered as nothing : but the opinion of that court, as he continues to observe, has been different ; and chancery will, by injunction, or otherwise, uphold and give efficacy to its decrees, as being of equal obligation with judgments at law. 3 *P. W.* 400. *n.* F. *Morris* v. *The Bank of England, Ca. Temp. Talb.* 218. 4 *Bro. Pa. Ca.* 287.

The steady resistance which the court of chancery met with from the courts of law, during the growth and progressive enlargement of its jurisdiction is probably one cause of the rule which is here mentioned. The earl of *Nottingham* in the case of *Colston* v. *Gardner,* 2 *Ch. Ca.* 43, complained that the judges at the common law were severe, and unwilling to support or assist the proceedings of chancery ; and he refers to some of their " *desperate*" resolutions, of which many may be found in the reigns of *Eliza-*

NEW-YORK,
May. 1. 1805.

Garrit Post &
James La Rue
v.
John Neafie.

NEW-YORK,
May, 1805.

Garrit Post &
James La Rue
v.
John Neafie.

*beth* and *James.*   *Brograve* v. *Watts*, *Cro. Eliz.* 651, and others. If a decree cannot be pleaded to a suit at law, it follows that it will not support such a suit ; for it would be an act of inconsistency in the courts to take cognizance of it in the one case, and not in the other.   A court of chancery on its equity side, is not, strictly speaking, a court of record.   4 *Inst. Ch.* 8.   Its jurisdiction and proceedings were originally considered as being confined to cases resting entirely in equity and good conscience, and where the party was without remedy at law.   Its decrees were considered as operating only *in personam*, and that they did not bind the lands or chattels.   Until very recently, this was with us, the regular and direct operation of the decree, notwithstanding the remedy by sequestration had been so long established, and the lands were affected only by proceeding to sequestration, as for a contempt. *Bligh* v. *Darnley*, 2 *P. W.* 621.

The reason why the courts of law would not take cognizance of decrees, is, therefore, to be deduced from the history and peculiar jurisdiction of the court of chancery ; and although the reason of the rule may not now be applicable to some of its decrees, yet we are not at liberty at this day to set aside the rule.   We are bound to declare the law as it has been handed to us, and the symmetry of our system of jurisprudence, will be best preserved by resisting innovation.   The plaintiffs are not without remedy in the present case, since our court of chancery is the proper tribunal for them to resort to, and for this we have an authority in *Morgan's* case, in the time of Lord *Hardwicke*, 1 *Atk.* 408.   In that case a Welch court of equity had decreed payment of a legacy, and the defendant, to avoid execution of that decree, fled into England.   A bill was filed before Lord *Harawicke*, stating the proceedings and decree in Wales, and the flight of the defendant, and the chancellor sustained the bill after demurrer, holding that an original independent decree might be had in that court for the legacy.

But if a suit at law will not lie upon a decree of our own court of chancery, the objection applies with much greater force to the decree in the present case.   For, after the decision in *Hitchcock* and *Fitch,* v. *Aicken,** November Term*, 1803, we are not to consider a decree in *New-Jersey*, as of absolute obligation, but only *primâ facie* evidence of such an equitable demand, which presumption the defendant may be permitted to rebut, and on certain grounds to open the merits of the controversy.   To sustain a suit on such a

* 1 vol. 460.

decree may therefore involve this court in the discussion of a wide field of equitable jurisdiction, and in the exercise of which its powers might be found to be holy inadequate. This difficulty would of itself be sufficient to bar the present action; for it would not be fit and proper that this court should assume cognizance of a cause, if it be not competent to meet the questions that may arise upon the merits, and afford the requisite relief.

But it is said, that by an act of the Legislature of New-Jersey, a decree in chancery has the force, operation, and effect of a judgment at law, and is to be enforced by sequestration, *fi. fa.* and *ca. sa.* This fact, however, cannot make any alteration in the case, and that for several reasons. It does not obviate the difficulty arising from the last objection I have taken, for foreign judgments and decrees are equally examinable here. Nor did the act probably intend any thing more than to make decrees a lien upon the property, in like manner and effect as judgments. It did not mean to confound the jurisdiction of courts of law and equity, nor interfere with the rules by which they were respectively governed. But whatever might be its intention and effect there, that statute has no operation upon the established principles of our own jurisprudence.*

For these reasons I am of opinion that the present action is not maintainable.

THOMPSON, J. I concur in the last opinion, on the ground of our decision in *Hitchcock* and *Fitch* v. *Aicken.* Were it not for the principles of that case I should be rather inclined to think an action would lie on a decree, where nothing but a simple debt was to be paid. But as the determination cited, places the judgments in sister states, on the same footing as foreign judgments, it would allow of opening the decree and shewing the consideration on which it was pronounced. This might lead us to equitable discussions; for, if the decree is to be opened at all, I know not where we are to stop. There is no point or rule to direct or govern. A court of law, therefore, might be competent to give the due relief. For this reason, I think the defendant ought to take the effect of his motion.

NEW-YORK,
May, 1805.

Garrit Post &
James La Rue
v.
John Neafie.

*In the circuit court of the U. S. for the district of *Connecticut*, an action was brought on a decree of the equity side of the superior court of that state, for the payment of money. On demurrer to the declaration, Chase *J.* ruled that an action at law would not lie upon the decree. *Stowe* v. *Hinkley.*