Meyer, J.
(dissenting). Respectfully, I dissent. I would affirm because (1) the issues in this action and the prior criminal proceeding are identical; (2) defendant was represented in the criminal proceeding by the same attorney who represents him in this action and had a full and fair opportunity in the criminal proceeding to litigate the ques *295 tion whether he struck plaintiff; (3) the absence of a right to jury trial in the criminal proceeding raises neither a constitutional nor a statutory bar to the application of the rules of collateral estoppel; and (4) the fact that harassment is a violation, rather than a misdemeanor or felony is, by itself, an insufficient basis for denying collateral estoppel effect to the criminal court’s finding.
I
The underlying principles can be quickly stated. S. T. Grand, Inc. v City of New York (32 NY2d 300) establishes that the rule of issue preclusion applies where the defendant in a prior criminal proceeding is defendant in a subsequent civil action involving the same issue and that the collateral estoppel rules enunciated in Schwartz v Public Administrator of County of Bronx (24 NY2d 65) apply as well when the prior proceeding is criminal as when it is civil. The Schwartz case makes clear that the criteria are two: “an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling” (24 NY2d, at p 71). Schwartz and B. R. De Witt, Inc. v Hall (19 NY2d 141) require that the opponent of collateral estoppel bear the burden of establishing that he did not have a full and fair opportunity, but impose on the proponent the burden of showing identicality of issue and that the issue was necessarily decided. Moreover, the S. T. Grand holding has been applied in Read v Sacco (49 AD2d 471) in awarding summary judgment to the victim of an assault, seeking to recover $225,000 as damages for his personal injuries, against the defendant in the civil action, previously convicted in Town Justice Court of assault, third degree, and fined $25. While the Appellate Division’s holding in Read is not binding upon us, its persuasive reasoning is not lessened by the similar holdings in Ross v Lawson (395 A2d 54 [DC]) and Newman v Larsen (225 Cal App 2d 22) or by the subsequent adoption by the American Law Institute of section 133 of the Restatement of Judgments, Second. Comment c to that section (Tent Draft No. 7, p 64) *296 notes that the rule of preclusion in favor of a third person in a subsequent civil action “applies whether the defendant in the criminal action is defendant or plaintiff in the subsequent civil action,” and the last paragraph of Comment e to the same section (Tent Draft No. 7, pp 66-67) states that: “There are two basic patterns for applying issue preclusion in favor of a third party. The clearest situation is where the person who was convicted of an offense brings an action against the third party to assert a claim that rests on factual premises inconsistent with those established in the criminal prosecution. The other situation is where the victim of the conduct that was criminally prosecuted then brings an action for civil redress against the wrongdoer for the consequences of the conduct. Although the courts were somewhat slower in coming to apply issue preclusion in the latter situation than in the former, it is now settled that preclusion should apply in both.”
II
The complaint in the present action alleges that “defendant assaulted and beat the plaintiff herein, by striking him repeatedly.” The accusatory instrument in the criminal proceeding contained but one count which charged harassment in violation of section 240.25 of the Penal Law in that “with intent to harass, annoy and alarm another person, the deft, [sic] struck such, person, to wit, the deft, [sic] struck your deponent several times about the chest, head and face area.” Section 240.25 of the Penal Law denominates harassment “a violation” and so far as here pertinent defines harassment as follows: “A person is guilty of harassment when, with intent to harass, annoy or alarm another person: 1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same”. Under familiar principles, the accusatory instrument having alleged that defendant struck Mr. Gilberg, defendant could not have been convicted of harassment without proof of striking. It is, therefore, irrelevant that under the statutory definition proof of an attempt or threat to strike would have been sufficient, and clear that the issues *297 are identical and that the City Court Judge in stating to defendant that “I’m finding you guilty of using physical force” was making a finding essential to the criminal proceeding (cf. O’Connor v G & R Packing Co., 53 NY2d 278). Plaintiff has, therefore, borne his burden of showing identically of issue and that the issue was necessarily decided.
III
Defendant, however, has not borne his burden. Whether defendant had a full and fair opportunity to establish in the criminal action that he did not use physical force on plaintiff Gilberg requires consideration of such factors as “the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in applicable law and foreseeability of future litigation” (Schwartz v Public Administrator of County of Bronx, 24 NY2d, at p 72, supra), or as it was recently put, in People v Plevy (52 NY2d 58, 65), consideration of “the ‘realities of the [prior] litigation’, including the context and other circumstances which, although not legal impediments, may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him.”
Since it is defendant’s burden, as the opponent, to tender evidentiary proof that he did not have full and fair opportunity (Zuckerman v City of New York, 49 NY2d 557), we need consider only so many of the Schwartz-Plevy factors as his papers on the motion for summary judgment put in issue. Defendant’s attorney’s affirmation asked that the motion be denied because (a) the issue was not identical and the proof required for harassment was less than required for assault inasmuch as proof of annoyance would suffice for harassment, (b) the City Court proceeding was nonjury, (c) the City Court Judge cut off his cross-examination of plaintiff concerning his activities during the altercation, (d) the City Court Judge was anxious to end the trial because he had other business to attend to and cut *298 short the questioning, (e) the City Court Judge did not set forth in his opinion the type of conduct required for conviction of harassment, (f) harassment is a violation not a crime, and (g) defendant denied striking plaintiff and “has evidence to offer on the facts in question.”
Item (a) is answered in Part II above; Items (b) and (f) in Parts IV and V below. Item (e) is irrelevant, the City Court Judge having found as already noted that defendant was guilty of “using physical force.” Items (c) and (d) are simply not borne out by the record. The colloquy that is referred to in Item (c) occurred during cross-examination of plaintiff and concerned the propriety of the Trial Judge’s statement that it was well known that plaintiff had had a heart attack some years before. Defendant’s attorney ultimately withdrew his motion for a mistrial and proceeded with cross-examination. The record contains not the slightest evidence that defendant’s attorney was prevented from asking plaintiff any question. As for Item (d) the Trial Judge did no more than note that he had a felony hearing to conduct when the harassment trial concluded. Defendant’s attorney did not even suggest then or at the end of the trial that he had been so hurried that he was unable to present his defense clearly or adequately, or ask for an adjournment, or otherwise indicate that he wished to examine defendant on redirect. Moreover, he answered the court’s inquiry at the end of the cross-examination of defendant concerning whether defendant had any further witnesses with a simple “No. Your Honor.” To give credence to the argument that defendant did not have a full and fair opportunity to present his defense on the basis of Items (c) and (d) is to emasculate the rule of issue preclusion. Finally, Item (g) is not only irrelevant because defendant furnishes no valid excuse for not offering the evidence during the City Court trial, but also is defective in form since it does not specify the nature of the evidence to be offered and its relevance to the issue.
The result is no different if we ignore defendant’s failure to raise the additional factors referred to in Schwartz and considered in the majority opinion. That opinion emphasizes (a) that defendant was found guilty and sentenced “im *299 mediately” upon conclusion of the trial, (b) that the present action was not begun until the day after defendant’s conviction for harassment and defendant and the City Court Judge were not aware that his finding might be given collateral estoppel effect, (c) that plaintiff claims damages of $250,000 in this action, (d) the flexibility of collateral estoppel as a doctrine, (e) the relative insignificance of the charge, and the brisk and informal way in which such a charge is tried, (f) the absence of a right to a jury trial, (g) the fact that defendant did not choose the forum, and (h) that plaintiff would not be bound by an acquittal but defendant would have to defend the charge with a vigor “out of all proportion to its otherwise petty nature, and at variance with the proper function of the local criminal courts, to provide expeditious disposition of minor cases.” I cannot accept the majority’s reasoning, as to jury trial and the fact that harassment is only a violation, for the reasons stated in Parts IV and V below; as to the other grounds because it deals with generalities rather than the facts of this case (Items [a], [c], [d], [e], [g]), misconceives the operations of a local criminal court such as the City Court of Mount Vernon (Items [a], [e], [h]), confuses foreseeability and knowledge (Item [b]) and overemphasizes mutuality (Item [h]), previously limited, if not entirely discarded, by this and most other courts.
The transcript of the City Court trial is part of the record on this appeal. It is 100 pages in length and shows that before trial began defendant’s attorney moved to dismiss for failure to accord defendant a speedy trial and in the interest of justice, that the witnesses for the prosecution were plaintiff, the court reporter who had taken the record of the examination before trial during which the altercation between plaintiff and defendant occurred, and one of plaintiff’s sons, who had been called into the examination room by the reporter when the altercation began, all of whom were cross-examined at considerable length by defendant’s attorney, that at the end of the People’s case defendant’s attorney moved to dismiss and when that motion was denied presented defendant as a witness in his own behalf, after which he acknowledged that he had no other witnesses to present. The City Court Judge then heard
*300 closing arguments from each side before rendering his decision and, after hearing defendant in his own behalf, imposed sentence. Since the sentence imposed was a one-year conditional discharge (the condition being not to harass the Gilberg firm) and the factual issue to be determined was essentially one of credibility relating to whether defendant struck plaintiff, there simply was no reason why decision and sentence should not have followed immediately after the close of trial. To characterize the procedure as brisk and informal and speak of a vigorous defense as out of proportion with the function of the court is utterly inconsistent with the record in this case, which shows beyond peradventure that the trial was conducted and completed with as much formality, dignity and decorum as any Supreme Court trial. Nor apart from the record in this case am I prepared to accept the majority’s conception of the operations of a local criminal court as a basis for denying preclusion to the determination of such a court,[1] except when concrete objective factors indicate that in a particular case there has not been full and fair opportunity to litigate the issue. As Comment d to section 68.1 of the Restatement of Judgments, Second, to which the majority refers, indicates, “The question in each case should be resolved in the light of the nature of litigation in the courts involved and the legislative purposes in allocating jurisdiction among the courts of the State” (Tent Draft No. 4, p 35). Illustrative of when preclusion should not apply is the example given in that Comment of procedures “tailored to the prompt, inexpensive determination of small claims” (id.). To equate the City Court’s trial of a violation which carries with it the possibility of a sentence of imprisonment for 15 days (Penal Law, § 70.15, subd 4) with the determinations made in small claims, mostly without lawyers or court reporters, is unrealistic and inconsistent with New York’s statutory scheme. Furthermore, that defendant did not choose the City Court forum is clearly not decisive even as to offensive preclusion (Restatement, Judgments 2d [Tent Draft No. 3], § 88, Comment d), and defendant has not suggested that, except for trial by jury, *301 the procedures available to him in the Supreme Court, but not available in the City Court, “may have been significantly influential in determination of the issue” (id.).
Nor is it relevant that the present action had not been begun when the City Court trial concluded. The factor as identified in Schwartz (24 NY2d, at p 72) is the “foreseeability of future litigtaion” (emphasis supplied), not awareness of the existence of other litigation. That foreseeability, rather than awareness, is the key is emphasized by Comment i to section 68.1 of the Restatement of Judgments, Second, which states (at Tent Draft No. 4, pp 40-41) that: “[P]reclusion should not operate to foreclose redetermination of an issue if it was unforeseeable when the first action was litigated that the issue would arise in the context of the second action, and if that lack of foreseeability may have contributed to the losing party’s failure to litigate the issue fully. Such instances are rare, but they may arise, for example, between institutional litigants as a result of a change in the governing law. Thus, a determination in an action between the taxing authorities and a corporate taxpayer that a transfer of property has not occurred may become relevant to a wholly different question of tax liability under an amendment to the tax law passed after the initial judgment was rendered. Another example of a case in which a determination may have unforeseeable consequences is one in which that determination is relevant to a claim involving property acquired after the first judgment has become final.” To suggest, as the majority does, that because the present action had not been begun when the harassment case was decided the Trial Judge and defendant’s attorney may not have realized the possibility is to do a disservice to both (the more so in light of the holding in Read v Sacco, supra, and similar cases), for it takes no imagination to foresee that a harassment complaint may be the ground for an action for damages.
Likewise blown out of proportion by the majority is the amount claimed in this action. Just as defendant’s attorney and the City Court Judge must be deemed to have been aware of the possibility of a damage action, *302 so the defendant’s attorney and the Trial Judge in the present action were necessarily aware that in such an action the only limitation on the amount claimed is the number of zeroes a typewriter can print. Balancing that awareness against the possible 15-day imprisonment sentence on the harassment charge, I find it difficult to see the disproportion the majority finds. The more so is this true if one looks at the bill of particulars in the present action, which has some relevance to whether preclusion should apply, and which shows that plaintiff was in the hospital for part of one day and unable to attend to business for several days, that he lost no earnings and had a hospital bill of only $109.50 and that his claim was essentially for discomfort and aggravation of a pre-existing heart condition.
It is, of course, true that plaintiff would not be precluded by defendant’s acquittal on the harassment charge. This results from the difference in the burdens of proof on the violation and on the personal injury action (Restatement, Judgments 2d, § 68.1, subd [d], and Comment f).[2] It is difficult, however, to understand why the absence of mutuality should be given much weight in light of our flat statement in B. R. De Witt, Inc. v Hall (19 NY2d, supra, at p 147) that mutuality “is a dead letter,” and of the conclusion of Comment e of section 133 of the Restatement of Judgments, Second (Tent Draft No. 7), that preclusion is not barred by the fact that “the third party would not have been bound in his civil action if the prosecution had resulted in an acquittal.”
In summary, I agree that collateral estoppel is intended to be a flexible doctrine and that some of the factors considered by the majority bear minimally on the determination to be made on this record, but conclude that most of the *303 elements on which the majority relies have nothing to do with this case. Since the flexibility concept, as I understand it, requires close analysis of the record before us rather than generalities, I cannot agree that preclusion should not be applied in this case.[3]
IV
The suggestion that offensive use of collateral estoppel would violate defendant’s right to a jury trial under either Federal or State Constitution is answered by the decision of the United States Supreme Court in Parklane Hosiery Co. v Shore (439 US 322, 333-337) and the seminal study of Shapiro and Coquillette entitled The Fetish of Jury Trial in Civil Cases: A Comment on Rachal v Hill (85 Harv L Rev 442), as well as by the Restatement of Judgments, Second.
Section 68 of the Eestatement of Judgments, Second (Tent Draft No. 4), states the general rule of issue preclusion. Comment d to that section flatly states (Tent Draft No. 4, p 7) that “The determination of an issue by a judge in a proceeding conducted without a jury is conclusive in a subsequent action whether or not there would have been a right to a jury in that subsequent action if collateral estoppel did not apply.” Section 88 states the rule of issue preclusion when the subsequent litigation is with a person not a party to the earlier litigation, and applies preclusion unless procedures were not available in the first action “which may have been significantly influential in determination of the issue” (Comment d [Tent Draft No. 3, p 164]), among which may be considered “the right of jury trial.” Clearly, therefore, the American Law Institute *304 saw no constitutional impediment to preclusion predicated on a Bench trial finding.
The reason becomes clear when one reviews the Shapiro and Coquillette article which shows that at least since 1772 the rule, as declared in Francis Buller’s Trials at Nisi Prius, has been (85 Harv L Rev, p 452): “ ‘And note; Wherever a matter comes to be tried in a collateral way, the decree, sentence, or judgment, of any court, ecclesiastical or civil, having competent jurisdiction, is conclusive evidence of such matter; and in case the determination be final in the court of which it is a decree, sentence, or judgment, such decree, sentence, or judgment will be conclusive in any other court having concurrent jurisdiction’ ” and reviews a series of New York cases (Post v Neafie, 3 Caines 22 [NY Sup Ct, 1805]; Le Guen v Gouverneur, 1 Johns Cas 436, 492 [NY Ct Err, 1800]; Simpson v Hart, 1 Johns Ch 91, 97 [1814]; Gelston v Hoyt, 1 Johns Ch 543, 546 [1815] ; Dobson v Pearce, 12 NY 156 [1854]) holding an equity decree conclusive in a later action at law.
Nor does CPLR 4101 (subd 1) avail defendant. Though it calls for a jury trial in an action for a sum of money only, the historically recognized preclusive effect of a prior non jury determination in an action for a sum of money only no more bows to the CPLR provision than did the right to a reference in a matter involving a long account sustained in Malone v Saints Peter & Paul’s Church (172 NY 269) and Steck v Colorado Fuel & Iron Co. (142 NY 236; see, also, 4 Weinstein-Korn-Miller, NY Civ Prac, par 4101.13; and see Right to Trial By Jury in Second Prelim Rep of Adv Comm on Practice and Procedure, NY Legis Doc, 1958, No. 13, p 559). The reference procedure survives as an exception to New York’s constitutional and statutory provisions because it existed, as did preclusion, when the Constitution was adopted. Nothing in the legislative history of the CPLR indicates an intention to reverse the centuries old rule of preclusion. Nor is there valid reason to change the rule, bearing in mind that preclusion need not be applied when significant unfairness can be shown (Shapiro & Coquillette, op. cit., p 455; Restatement, Judgments 2d [Tent Draft No. 3], § 88, Comment d).
*305 V
Finally, that harassment is but a violation in the criminal hierarchy is, by itself, no reason for denying preclusion. To the extent that preclusion may be found to be unfair in the circumstances of a given case, the lesser importance of a violation is a factor to be considered in determining whether defendant in the prior criminal proceeding should not be held bound. Beyond that, however, the Legislature has been specific when it found reason to deny collateral estoppel effect as a matter of policy (Vehicle and Traffic Law, § 155 [traffic convictions] ; Uniform City Court Act, § 1808; Uniform Justice Court Act, § 1808; New York City Civil Court Act, § 1808 [small claims judgments]). We should not extend that list by implication, but rather should leave it to the opponent of preclusion to demonstrate unfairness as a reason for denial of preclusion, whatever the nature of the charge tried in the earlier trial. Here, as already shown, no such demonstration has been (or could be) made.
Judges Gabrielli, Jones and Fuchsberg concur with Judge Wachtler ; Judge Meyer dissents and votes to affirm in separate opinion in which Chief Judge Cooke and Judge Jasen concur.
Order reversed, with costs, and the motion for summary judgment denied. Question certified answered in the negative.

. (Compare, Mayers, Constitutional Guarantee of Jury Trial in New York, 7 Brooklyn L Rev 180, 192.)

. Indeed the difference in burden of proof favors preclusion of a defendant convicted in the first trial for he can only have been convicted if the fact finder found against him beyond a reasonable doubt and taking into consideration the presumption of innocence, whereas, in the personal injury action the burden of proof is only a preponderance and the “presumption of innocence is not indulged in a civil action,” even one predicated upon an assault (Kurz v Doerr, 180 NY 88, 91).

. As put in Comment j to section 68.1 (Tent Draft No. 4, p 41): “[T]he court in the second proceeding may conclude that issue preclusion should not apply because the party sought to be bound did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding. Such a refusal to give the first judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based simply on a conclusion that the first determination was patently erroneous. But confined within proper limits, discretion to deny preclusive effect to a determination under the circumstances stated is central to the fair administration of preclusion doctrine.” (Emphasis supplied.)