The opinion of the court was delivered by
Tilg-hmaN, C. J.
This is an action of debt, brought by Howell Tatem the defendant in error, who was plaintiff below, against Jinn Evans, administratrix of John B. Evans, deceased, on a decree in the “ Court of Errors and Appeals, and Court of Equity for the state of Tennessee,” for the sum of 6239 dollars and 10 cents.
The defendant pleaded nil debet, and nul tiel record, to both which pleas the plaintiff demurred, and judgment was given in his favour. The defendant pleaded also, no assets, plene administra-vit, and payment with leave, &c. to which the plaintiff replied, assets, not fully administered, and non solvit; and issues were thereupon joined and a .verdict given on each issue for the plaintiff. On the trial of thp cause in the court below, the defendant offered to prove, “ that neither she, nor her intestate, were, at the time of the said decree^, or any time before, indebted, or bound,’ in law or equity, to pay to the plaintiff any sum or sums of money. Also, that the defendant being an administratrix under the law of Pennsylvania, and not. of Tennessee, and the said decree being made on matter alleged to have arisen and existed in the life time of the intestate, was not, as such, amenable to the authority of a court in Tennessee, and therefore the said decree was not made in a court having jurisdiction.5’ The defendant also offered to prove other matters which went to the merits of the case, all of which evidence wag rejected by the court. The counsel for the plaintiff in error, argued his case on four points, which I shall now consider.
1. Was the defendant who administered in Pennsylvania, liable to a . suit in Tennessee, for matters which arose in the life time of the intestate? I can perceive no good reason against such a suit, but many in its favour. If a person who administers in one state, and receives assets there, is not sueable on his *259 removal to another state, it would produces the greatest injustice. The removal from state to state, is the act of the administrator, which the creditors of the intestate cannot prevent, and therefore should not be prejudiced by it. The assets are to be administered according to the law of the state, within which the administration was granted, and justice requires that the administrator should be liable, to the amount of the assets which have come to his hands in whatever state he may be found. The counsel for the plaintiff in error, admits that the administrator may be sued in another state, provided he has removed there, with intent to make it-the place of his permanent residence. But it is immaterial what his intent is. Wherever he goes he carries with him the obligation to administer the assets. So has the law been held from 'the time of Lord Coee- to the present day. In Uowdle’s 6 Co. 46, it was decided, that one who received letters testamentary in Ireland, where assets came to his hands, was liable to a suit in England. There is good sense in the following observation of the court, in that case. “If the executors have goods of the testator in any part of the world, they shall be charged in respect of. them; for many merchants, and other men, who have stock and • goods to a great value beyond sea, are indebted here in England; and God' forbid that these goods should not be liable for their debts; for otherwise there would be a great defect in the law.” The.same principle was declared to be law by this court, in the western district in the case of Swearingen’s Executors v. Pendleton’s Executors, 4 Serg. & Rawle, 389. There it was held that a suit might be sustained in Pennsylvania, against an executor who had administered in Virginia. So that this point may be considered as settled,
2. The second question in this case is, whether the plea of nil debet was good? If this plea was good, the merits of the decree of the court of Tennessee, might have been contested. On the issue of nil debet, every thing is thrown open. In an action of debt on a.foreign judgment, the defendant is at liberty to controvert the original cause of action. But, under the constitution of the United States, judgments in one state, are not considered, in another^, as foreign judgments. In art. 4. sect. 1. of that constitution, it is declared, that “ full faith and credit shall be given, in each state, to the public acts, records, and judicial proceedings of every'other state, and the congress may, by general laws, prescribe thé manner in whi.ch such acts, records, and proceedings shall be proved, and the effect thereof.” The congress have exercised the power vested in them by this article, by their act passed-the 26th May, 1790, in which, after prescribing the mode of authentication, they declare, “that the said records and .judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them, in every court within the United States, as they have by law, or usage, in the courts of the state from whence the said re» *260 cords are, or shall be, taken.” The question then is, what faith and credit would the courts of Tennessee have given to this decree in chancery. The answer cannot be doubted. The decree would have been held incontrovertible. The- construction of this article of the constitution has been settled by repeated decisions in various courts of various states, as well as in the courts of the United States. A judgment in one state, is conclusive in all other states, provided it was rendered by a court having competent jurisdiction The first decision on this subject, was in the casé of Armstrong v. Carson’s Executors, in the year 1794, in the Circuit Court of the United States, held at Philadelphia. It was an action of debt on a judgment in the Supreme Court of New Jersey. The defendant pleaded nil debet, which was held to be a bad plea. In Bissel v. Brigs, 9 Mass. 462, a suit was brought- on a judgment in New Hampshire, against an inhabitant of Boston, who was arrested in New Hampshire, and appeared and pleaded. It was held by the Supreme Court of Massachusetts, that by virtue of the constitution and laws of the United States, the defendant -was concluded by this judgment. It appeared that the court of New Hampshire had jurisdiction, and that ■ was the only matter that could be inquired into. In Mills v. Duryee, 7 Crunch. 481, it was decided by the Supreme Court of the United States,- that nil debet was a bad plea, in an action brought in the Circuit Court of the District of Columbia, on a judgment of the Supreme Court, of' New York. And the same point was decided in the same manner, by the Supreme Court of the United Slates, in the case of Hampton v. M‘Connel, 4 Wheat. 234, which was an action of the Circuit Court of South Carolina, on a judgment in the Supreme Court of New York. The Supreme Court, of New York, seems once to have been of opinion, that judgments rendered in one state, were to be considered as foreign judgments, and therefore not conclusive, in another. I allude to the case of Hitchcock v. Aiken, 1 Caine’s, 460. But that highly respectable court, on mature reflection has come to the opinion, that a. judgment fairly and regularly obtained in one state, is conclusive in another. This will appear from the cases of Burden v. Fitch, 15 Johns. 144, and Andrews v. Montgomery, 19 Johns. 162. I-have no hesitation, therefore, in concluding, that the plea of nil debet, in the case before us, was bad.
3. We come now to the third point, which is, whether the plea of nul tiel record was good?
If proceedings in Courts of Chancery are not records, nul tiel record was not a good plea. ’ And that such proceedings áre not records seems to be well established. In Gilbert’s Law of Evidence, 49, it is said, that proceedings in chancery by bill and answer, are not records, because they are secundum sequum et bo-num, and not according to the laws and customs of the realm. In Buller’s Nisi Prius, 235, we find the same assertion, founded *261 on the same reason. Lord Coke defines a record, to be i( a proceeding in a court of justice which has power to hold a plea according to the course of the common law,” Co. Lit. 260. In the case of Doughty v. Fawn, Yelv. 226, it was said by the court, that ii orders in chancery are not of record, to be tried by the record, but by a jury.” It is to be observed, that in the case before the court, the plaintiff’s declaration does -not call the decree in chancery a record, and if the defendant intended to deny that any such decree existed, he might have framed his plea so as to meet the averment in the declaration; and the tender of the issue should have concluded to the country, according to the case in Yelverton. The court below was right therefore in deciding that the plea of nul tiel record was bad.
4. The fourth and most difficult question is, whether an action of debt lies in a court of common law, to recover a sum of money ordered to be paid by a decree in chancery.
It'is no wonder that little upon this subject is to be found in the English books, because in England, the Court of Chancery having ample power to enforce its' own decrees, there can seldom be occasion to resort to a court of law. The same observation applies to those of our sister states which have courts of chancery. The subject however has sometimes been brought before a court of law in one state, when it has been necessary to proceed on a decree in chancery in another. In Pennsylvania, where there is no Court of Chancery, should there be occasion to proceed on a decree in chancery in another state, it must be in a court of law, or not at all. The great objection to an action in a court of law, is, that in general, decrees in-chancery are'not simply for the payment of a sum of money, but also for something specific, which is ordered to be done, by one party or the other. In such cases there would be great difficulty in supporting an action at law. But the present decree being simply for the payment of money, all other considerations may be thrown aside. It is a general principle, that where a man is under an obligation to pay a certain sum of money, whether that obligation is founded on a contract, or the judgment of a court, an action of debt lies. On that principle, we support actions of debt onforeign judgments. And I confess, I see no reason why a decree in chancery, is not as strong as a foreign judgment. If it be objected, that proceedings in chancery are not according to the course of the common law, the same objection lies against judgments of courts on the continent of Europe, where the proceedings are according to the civil law. To be sure, in case of a foreign judgment, the defendant is permitted to deny the original cause of action. But so. likewise would the defendant in the -present case have been permitted to enter into the merits of the original controversy, were it not for the constitution and laws of the United States, which forbid, it. The objection, therefore, of being precluded from contesting the merits of the decree, does not lie against *262 the action of debt, which in its nature did not preclude it, but against the constitution. And as to that, all that can be said is, that although in some instances the conclusiveness of judgments may be inconvenient, yet upon the whole,, it produces good; and whether it does or not, this court has no power to alter the constitution. I have said that this subject was. not altogether new. It was brought before the Supreme Court of New York, in the case of Post, &c. v. Neafie, 3 Caines, 22. That was an action on a decree in chancery in New Jersey, for the payment of a sum of money, and a majority of the court sustained the action. By the law of New Jersey, a decree in equity has the effect of a judgment in the Supreme Court of law. Whether the state of Tennessee has a law of that kind, I know not; but it appears that an execution may issue there, on a decree in equity, as on a judgment at law. The Supreme Court of New York however, did not decide upon the particular circumstances which I have mentioned in the law of New Jersey, but upon broader and more general principles. It •has been objected, that courts of law are not bound to give effect to decrees founded upon principles of equity. But why not? Granting that the demand did originate in principles of equity, yet after a'fair hearing, and full consideration, it was decided that the plaintiff was entitled to a certain sum of money, to be paid by the defendant; what reason is there which should restrain a court of law from sustaining an action for the sum thus reduced to a certainty? It was also objected, that a decree in chancery, may be opened, altered, or annulled, on a bill of review. True it may; and so may a judgment at law be reversed on a writ of error. But still, an action of debt lies on the judgment, as long as it is in foi’ce. Should it be afterwards reversed, the injured parly would not be without remedy, and the same would be the case should a decree in chancery be reversed. No case has been shown, where it has been • decided on broad principles, that an action at law would not lie for a sum of money .decreed to be paid by the court of equity, and one case, (Post, &c. v. Neafie,) has been shown to the contrary. In Pennsylvania, the courts should be extremely cautious in establishing that principle, because it would be shutting their doors against all- relief in cases where money" has been decreed to be paid by courts of equity in other states. Very urgent cases may arise, where crying injustice would be done, if relief were denied, and, we ought not to rely on the equity courts of the United States, which may be established in Pennsylvania. Our own system of j urisprudence should be complete. In considering this question, we should throw out of view, any redress which may be accidentally obtained, in courts over which the legislature of this state has no controul. Upon the whole, I am of opinion, that the action should be sustained, and this judgment of the District Court affirmed.
“Judgment affirmed.