## McKim *vs.* Odom.

An action of debt will lie as well on *a decree of a Court of Chancery,* in another State, for the payment of money only, as on a judgment of a Court whose proceedings are according to the course of the common law.

*Assumpsit* will not lie upon such decree.

Courts of equity have jurisdiction of all matters of *account.*

This was an action of *assumpsit* on a decree in chancery in the State of *Maryland,* for the payment of money. A statement of the case was agreed on by the parties, and sufficiently appears in the opinion of the Court.

*Dane,* for the defendant, contended, that no action at law would lie upon this decree, but that if any could be maintained

McKim *v.* Odom.

it should be *debt* and not *assumpsit*. In support of which, he cited the following authorities : *Bissell* v. *Briggs*, 9 *Mass.* 462; 7 *Dane's Abr.* 553 ; 5 *Dane's Abr.* 218; *Buttrick & ux.* v. *Allen*, 8 *Mass.* 273 ; *Doug. Rep.* 1 ; *Richards* v. *Jones*, 3 *Gill and Johns.* 163 ; *Hall & al.* v. *Williams*, 6 *Pick.* 232 ; *Commonwealth* v. *Green*, 17 *Mass.* 546 ; 8 *Johns.* 173 ; *Warren* v. *Flagg*, 2 *Pick.* 448 ; *Mitchell* v. *Osgood*, 4 *Greenl.* 124.

He also argued against the validity and effect of the decree, on the ground of a want of jurisdiction in the Court making it.

*Holmes* and *Goodenow*, for the plaintiff, maintained that the Court of Chancery in *Maryland*, had jurisdiction of the case — that, the decree was valid and binding on the parties — and that, *assumpsit* as well as *debt* would lie thereon ; citing the following authorities : 1 *Phil. Ev.* 281 ; 1 *Stark. Ev.* 246 ; *Com. Dig. Tit. Evidence*, A. 4 ; *Hall* v. *Odber*, 11 *East*, 117 ; *Buttrick et ux.* v. *Allen*, 8 *Mass.* 273 ; *Taylor* v. *Boyden*, 8 *Johns.* 173 ; *Warren* v. *Flagg*, 2 *Pick.* 448 ; *Watson* v. *Bourne*, 10 *Mass.* 339 ; 17 *Johns.* 384; *Mills* v. *Duryee*, 7 *Cranch*, 481 ; *Post and al.* v. *Neafie*, 3 *Johns.* 22 ; 5 *Johns.* 132 ; *Hall & al.* v. *Williams & al.* 6 *Pick.* 232 ; *Taylor* v. *Boyden*, 8 *Johns.* 173 ; *Starbuck & als.* v. *Murray*, 5 *Wend.* 148; *Shumway* v. *Stillman*, 6 *Wend.* 447.

The opinion of the Court, at a subsequent term, was delivered by

PARRIS J. — It has been repeatedly adjudged, that foreign judgments are *prima facie* evidence merely of the right and matter which they purport to decide. Such was understood to be the law when the Constitution of the *United States* was adopted, and such is now holden as law in all, or nearly all the American Courts. It is unnecessary, in this case, to enter into a consideration of that principle. Much strong argument may be found, in books of great authority, in favor of giving a higher sanctity, than mere *prima facie* evidence, to foreign judgments, in personal actions, rendered in courts having jurisdiction of the parties and the subject matter, especially when both parties are natives or citizens of the country by whose tribunals such judgments have been rendered.

Many eminent jurists hold, that when a foreign judgment has been fairly obtained, pronounced by proper authority, in a case between citizens, and within the jurisdiction of the court, such judgments should every where be taken as conclusive evidence, between the same parties, of the facts which it purports to decide ; and that no further enquiry into the merits should be permitted. ·But foreign judgments have not been treated with that respect in the courts of this country, either before or since the revolution.   While the several states were colonies, they were considered foreign to each other, and their judgments were deemed foreign judgments, and were received as *prima facie* evidence only, in the courts of the other colonies.   Consequently, the merits of such judgments were open to re-examination.

To remedy this inconvenience, the people, in the first section of the fourth article of the constitution of the *United States,* provided that full faith and credit should be given in each state, to the public acts, records and judicial proceedings of every other state ; — and Congress, in pursuance of authority under the constitution, enacted that the records and judicial proceedings of the states, properly authenticated, shall have such faith and credit given to them, in every court within the *United States,* as they have by law or usage in the courts of the state from whence the said records are or shall be taken.

By these provisions, the judgment of a court of any of the states is put upon a footing of domestic judgments ; — for being duly authenticated, as provided by the Act of Congress, of 1790, *chap.* 11, the court, to which such authenticated copy is presented, is bound to examine it and pronounce judgment upon it, in the same manner that they would upon a record of any court of their own state.   *Mills* v. *Duryee,* 7 *Cranch,* 481 ; *Hall* v. *Williams,* 6 *Pick.* 232.   In the latter case, the court say, that the judgments of sister states are to be treated altogether as domestic judgments, in regard to the proof of their existence.

But to give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject matter ; and whether it thus had jurisdiction or not is, if the defendant see fit to make it so, a question preliminary to the enquiry, what does the record say as to the facts adjudicated.   The

record itself may be *prima facie* evidence that the court had jurisdiction, but it has been holden that this may be controlled and overcome by other evidence. If the jurisdiction be established, or not denied, the judgment is as conclusive as a domestic judgment, and as such, is to be treated by the Court.

To an action of debt on such a judgment, as to a like action on a judgment of our own courts, the proper plea is *nul tiel record*, and under our statute abolishing special pleading, this must be pleaded as the general issue. Some doubts were expressed in the argument, whether the defendant might not properly plead *nil debet*, and *Bissel* v. *Briggs*, 9 *Mass.* 462, was relied upon. The form of pleading does not appear to have been distinctly made a question in that case. *Nil debet* was pleaded and replied to without objection.

There seems to be one uniform current of authority, that where the action is brought on a judgment, *nil debet* is an improper plea. Where the specialty or record is but inducement to the action, and matter of fact is the foundation of it, *nil debet* is a good plea; but where the action is grounded upon a record or specialty, it is no plea : 1 *Saund.* 38, *note* 3 ; *Selw. N. P.* 531 ; 1 *Chitt. Pl.* 108, 481 ; 2 *Stark. Ev.* 463. *Nil debet* is not a good plea in a suit on a judgment in another state, because not a good plea in such state. *Nul tiel record* is the proper plea in such a case : 1 *Kent's Com.* 260 ; *Benton* v. *Bergot,* 10 *Serg. & Rawle,* 240 ; *St. Albans* v. *Bush,* 4 *Vermont Rep.* 58. In *Hall* v. *Williams,* 6 *Pick.* 232, the defendant pleaded both *nul tiel record* and *nil debet.* The court held the former to be a proper plea, and, as the cause went off on the issue formed on that plea, no decision was had on the other. We perceive no difficulty, under our mode of pleading, in presenting a defence on paper in such a manner as to secure to the defendant all his rights with *nul tiel record* for the general issue. He may allege in his brief statement, whatever might have been set forth in a special plea, previous to our statute abolishing special pleading. He may plead a release, or that the debt was levied by a *fieri facias,* &c. 1 *Chitt. Pl.* 481. So he may show by plea, that the court, from which the record comes, had no jurisdiction over his person, or

he may plead any other fact which shews the judgment to be a nullity, as was done in *Aldrich* v. *Kinney*, 4 *Connect. Rep.* 380, and in *Harrod* v. *Barretto*, 1 *Hall*, 155.

In 7 *Wentw. Pl.* 114, will be found a plea of *nul tiel record*, and a replication tendering an issue to the court, and a special plea, in the same case, with a replication tendering an issue to the country. In *Hall* v. *Williams*, before referred to, the defendants pleaded specially to avoid the judgment as improperly obtained, in addition to the general plea, and the court said, this was the usual mode of raising the question in the other states. Any special plea may be pleaded which would be good to avoid the judgment in the state where it was pronounced, 1 *Kent's Com.* 261.

It is contended, that an action at law cannot be maintained in this court on a decree rendered in the High Court of Chancery, in *Maryland*. We readily assent to the position in all those cases where the decree is for specific performance, and not for the payment of money. It is a general principle, that where a man is under an obligation to pay money, the law will provide the process and the means to enforce payment. The cases of assumpsit on foreign judgments, to be found in the books, are sustained on the implied promise, which the law presumes every man to make to perform what the law enjoins. As said by *Blackstone*, 3 *Com.* 160. " Every man is bound, and hath virtually agreed to pay such particular sums of money as are charged on him by the sentence, or assessed by the interpretation of the law. Whatever the laws order any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge. And this implied agreement it is that gives the plaintiff a right to institute a second action, founded merely on the ground of contract, in order to recover such sum. So that if he hath once obtained a judgment against another for a certain sum, and neglects to take out execution, he may afterwards bring an action of debt on this judgment and shall not be put upon the proof of the original cause of action ; but upon shewing the judgment once obtained, still in full force and yet unsatisfied, the law immediately implies that, by the original contract of society, the defendant hath contracted a debt and is bound to pay it."

It is admitted, that a judgment in a court of law in another state, or in a foreign court, is a sufficient ground of action here; and why should not a decree in Chancery be alike available? If such a decree be conclusive between the parties, in the state where it was rendered, if the court had jurisdiction, the parties were heard, and nothing of irregularity or fraud appears, or is even suggested to vitiate the proceedings, it is not easy to perceive why a decree emanating from the highest tribunal in the state is not entitled to as much respect and consideration as a judgment of a subordinate court of law. A foreign state may provide that all controversies between its citizens shall be litigated in Chancery, or as is the case in one of the *United States,* the courts may be governed by the principles and proceed according to the forms of the civil law, and who shall say that the administration of justice there is not as pure as here, or that the judgments or decrees of such a court are entitled to less respect than those of a court proceeding according to the course of the common law. If a foreign state have jurisdiction of the person of the debtor, and of course the right to enforce the payment of the debt, it cannot be important by what form of process, or in what manner they exercise that right. *Stevens* v. *Gaylord,* 11 *Mass.* 265.

Justice is administered in a court of equity upon as settled and certain principles as in a court of law. The maxims of the Court of Chancery are as fixed as those which govern other tribunals, and it is as much bound as a court of law by a series of decisions applicable to the case and establishing a rule. It has no discretionary power over either principles or established precedents: 1 *Kent's Comm.* 490. Whatever discretion it exercises is governed by the rules of law and equity, and in no case does it contradict or overturn the grounds or principles of law: *Cowper* v. *Cowper,* 1 *P. Wms.* 753. The system of courts of equity is a laboured, connected system, governed by established rules and bound down by precedents, from which they do not depart. The systems of jurisprudence, both of law and equity, are founded on the same principles of justice and positive law, but varied by different usages in the forms and mode of their proceedings. The

rules of property, rules of evidence, and rules of interpretation in both courts are, or should be, the same. 3 *Bl. Com.* 342, *et seq.*

Such are the principles which govern courts of Chancery, both in this country and *England*. From the record before us we perceive that the learned Chancellor of *Maryland* does not feel authorised to depart from the ancient landmarks of the court. In his very able opinion, delivered on the fifth of *January*, 1829, upon the motion for a *distringas* against the *Franklin Bank*, after a lucid exposition of the law applicable to the motion, the Chancellor says, " When I consider that this is the first application of the kind, that there has been, heretofore, no regularly settled practice in this court, in relation to bodies politic, and that it has a large and almost unlimited control over its own rules of practice, I feel tempted, at once, to make the evidently useful alteration in the course of proceeding. But when, on the other hand, I recollect that it has been always considered as an established principle, that this court is confined, in all material particulars, to those forms of proceeding which have been settled by the court of Chancery, in *England*, and that this conformity to the ancient English course of proceeding has been, in various ways, recognized by our legislative enactments, I have become satisfied that it is safest and best to leave the matter to the Legislature, who alone are competent to alter and shorten the process in Chancery, permanently and effectually."

We think that, on principle, as much credit is due to decisions in Chancery as to judgments at law, and the record before us affords plenary evidence that the adjudications of the Chancellor of *Maryland* are entitled to the highest consideration.

Why then should not this record have the same effect as a judgment certified to us from the Court of Appeals of the State of *Maryland*? Unless it can be enforced in a court of law it cannot be enforced at all in this state, as we have no separate court of Chancery. The consequence will be, that when a case has been litigated in Chancery, in another state, for years and at great expense, as this has been, and the plaintiff has succeeded in obtaining a decree in his favor, the defendant may completely avoid the effect of such decree by removal to another jurisdiction and the plaintiff be necessarily subjected to all the costs of the prior proceedings.

In *Hopkins* v. *Lea*, 6 *Wheat*. 109, the court say, "a fact, which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties, in the same or any other court. Hence a verdict and judgment of a court of record, or a *decree in Chancery*, although not binding on strangers, puts an end to all further controversy concerning the points thus decided between the parties to such suit. In this there is and ought to be no difference between a verdict and judgment in a court of common law, and a decree of a court of equity. They both stand on the same footing, and may be offered in evidence under the same limitations, and it would be difficult to assign a reason why it should be otherwise." In the case just referred to, the court held that the report of a Master, accepted and confirmed by the court, was, with the decree, proper evidence of the matter which they professed directly to decide, also adding that they do not mean to deny that they were *conclusive*, but leaving that point undecided, as the case did not require a decision thereon. A decree in Chancery is of the like nature with a judgment at common law. *Chan. Rep.* 234. It was said by *Ch. Just. Eyre*, in *Emerson* v. *Lashley*, 2 *H. Bl.* 251, that there is a sort of credit given to the judgments of a court of competent jurisdiction, that they create debts and duties upon which actions of debt are founded. In 7 *Wentw. Pl.* 95, is a declaration, *Mercer* v. *Montague*, in debt in the King's Bench, in one of the colonies, for a sum of money decreed to be due to the plaintiff, by the Chancellor in the Court of Chancery at *Westminster*. *Ch. Just. Holt* says, " pleading, though it does not make the law, yet is good evidence of the law, because it is made conformable to it :" 1 *Ld. Raym*. 522. So pleading is the best evidence of the law,—3 *Bingh*. 541,— and *Lord Kenyon*, speaking of the form of proceedings, says, " this shews the distinction beyond all doubt, and is of greater authority than even adjudged cases, because *the writs and records form the law of the land*," 4 *T. R.* 648 — and, as said by its great oracle, the law itself speaketh by good pleading— *Co. Litt.* 115, *b*.

But we are not without adjudged cases upon this point. As the court of Chancery in *England*, and the several courts of Chancery in the *United States*, have power to execute their own

decrees within their respective jurisdictions, and as such decrees are generally for the performance of certain acts to which common law courts cannot compel obedience, and, therefore, the successful party can, in such cases, obtain execution only out of the same court, there is rarely, occasion to resort to another jurisdiction for aid. There are, however, such cases in the books of both countries. *Sadler* v. *Robins*, 1 *Camp.* 253, was an action on a decree of the High Court of Chancery in the island of *Jamaica*. It appeared, at the trial before *Lord Ellenborough*, that the decree in the Court of Chancery had not been made up, so that it could be ascertained how much was actually due, and the court held it to be too imperfect to be the foundation of an action, but the *Ch. Jus.* said, " had the decree been perfected, I would have given effect to it as well as to a judgment at common law." In *Henley* v. *Soper*, 8 *Barnw. & Cresw.* 16, which was debt on a decree in a Colonial court, *Lord Tenterden*, *Ch. Jus.* said, " There is a great difference between the decree of a colonial court, and a court of equity in this country. The colonial court cannot enforce its decrees here, a court of equity in this country may ; and therefore, in the latter case there is no occasion for the interference of a court of law, in the former there is, to prevent a failure of justice. In the case of *Sadler* v. *Robins*, the sum due on the decree was left indefinite, but *Lord Ellenborough* said that, had the decree been perfected, he would have given effect to it as well as to a judgment at common law. *Holroyd J.* said, " But for the case before *Lord Ellenborough*, I should have entertained some doubts upon the present question. That, however, is an authority in favor of an action upon the decree of a foreign court of equity, if duly perfected. The other Judges of the King's Bench concurred, and the action was sustained. There can be no doubt, therefore, upon this point, at the present day, in the English Courts. In *Post* v. *Neafie*, 3 *Caines*, 22, the Supreme Court of *New York*, after full consideration, decided that debt will lie on a decree of a court of Chancery in a sister State, if it be simply for the payment of a sum of money by the defendant, without any acts to be done by the plaintiff.

In *Dubois* v. *Dubois*, 6 *Cowen*, 494, which was debt on the decree of a Surrogate, the court say, " The principal question raised is, whether debt will lie ; — The general rule is, that this form of action is proper for any debt of record, or by specialty, or any sum certain. It has been decided that debt lies upon a decree for the payment of money made by a court of Chancery of another State, and no doubt the action will lie upon such a decree in our domestic courts of equity. Whether a Surrogate's court is a court of record need not be decided. It has often been said that a Court of Chancery is not a court of record. It is sufficient that a decree in either court, unappealed from, is final. Debt will lie."

In *Evans* v. *Tatem*, 9 *Serg. & Rawle*, 252, the Supreme Court of *Pennsylvania* decided, that an action at law is maintainable in that State on a decree of a court of equity in *Tennesee*, for the payment of money. *Ch. Jus. Tilghman*, in the conclusion of his opinion says, " In *Pennsylvania*, the courts should be extremely cautious in establishing the principle, that an action will not lie for a sum of money decreed to be paid by courts of equity in other states. Very urgent cases may arise, where crying injustice would be done, if relief were denied." *Howard* v. *Howard*, 15 *Mass.* 196, was debt on a decree of divorce ordering the defendant to pay alimony. On demurrer to the declaration, the defendant contended that debt would not lie, there being no judgment according to the course of the common law. The court in overruling the demurrer, say, " there seems to be no reason why debt should not lie. The debt is certain, and it is proved by record ; and the decree is, in effect, as much a judgment, as if rendered on the common law side of the court. So it was decided by the same court in *Rice* v. *The Barre Turnpike Corporation*, 4 *Pick.* 130, that an action of debt would lie on an order of the Court of Sessions in favor of one whose land had been injured by the location of the turnpike. It was objected that the form of action was misconceived, for the order on which it was brought was not a judgment. The court said, there could be no question but the action was well brought.

After this examination of principles and authorities, we feel clear in deciding as the law of this State, that an action can here

be maintained on a decree in Chancery in another State, for the payment of money only. But it is said that no action at law will lie in this court, to enforce a decree in Chancery in *Maryland*, because none would be sustained on such a decree by the courts of law in that state, and we are referred to the case of *Richardson* v. *Jones*, 3 *Gill & Johns.* 163. The ground of that decision was, that the Court of Chancery of *Maryland* would enforce its own decrees within its own jurisdiction, and that no action at law would lie to enforce such a decree within the territorial jurisdiction of the court which rendered it. The Court of King's Bench would probably decide in the same way. *Carpenter* v. *Thornton*, 3 *Barnw. & Ald.* 52. But the reason of the decision in *Richardson* v. *Jones*, wholly fails here. *Odom*, the losing party, has removed from the jurisdiction of the court, and can no longer be reached by its process. The court had jurisdiction over the person of the defendant, and the subject matter of the suit. The investigation was full and thorough, and conducted according to the well established principles of courts of Chancery, and, after a full hearing, a decree was entered, which, within that State, at least, of which both parties were citizens, is final and conclusive. Is it to be rendered of no validity by the act of the defendant himself? Surely, courts would labor to very little purpose, if the whole effect of their judgments were to depend upon the voluntary acquiescence of the losing party, or if he could wholly avoid such judgment by a mere change of domicil. Because the foreign court could not enforce its own decrees in England, was the reason given for sustaining the action in *Henley* v. *Soper*, before referred to; and the like reason was given in *Evans* v. *Tatem*. Again, it is said, that by sustaining this action, we shall give to the decree greater effect than it would have in *Maryland*. By the Act of 1790, Congress prescribed the effect that the public acts, records, and judicial proceedings of each State should have in the courts of every other State, viz.: such faith and credit as they have by the law or usage in the courts of the State from whence the said records are or shall be taken. This has no reference to the mode of enforcing the judgments of the courts of the several states, but to the credit which shall be given to their records as evidence, and

McKim v. Odom.

their effect when offered as such. If, in the courts of the State from which such records are taken, they have the faith and credit of the highest evidence, that is to say, record evidence, of incontrovertible verity, they are to have the same faith and credit in the courts of every other state. If a judgment is conclusive in the State where it is pronounced, it is equally conclusive in every other. If it is open to re-examination there, it is so everywhere: 3 *Story's Com. on Const.* 183; 1 *Kent's Com.* 260. If the record, which is here produced, would be received as conclusive evidence of the facts adjudicated in the courts of *Maryland*, in any proper action wherein it would be admissible as evidence, it is to have the same conclusive effect here, in any action between the same parties, wherein the subject matter is in litigation. The objection of the defendant is as to the remedy. He says the plaintiff has no remedy in a court of law in this State, and he relies upon the constitution and law of the *United States*, relating to evidence. It is one thing for the law to afford a remedy, but quite another for a party to prove by competent and conclusive evidence that he is entitled to it.

It is further objected, that the Court of Chancery in *Maryland* had no jurisdiction of the subject matter whereon the decree was rendered, as the plaintiff had a plain and perfect remedy at law.

The plaintiff became the owner of one half of the schooner *Beauty*, under a purchase from *Moore*. The defendant, the owner of the other half, had sailed her on a voyage to the *West Indies*, and back to *Baltimore*, and thence on another voyage to *Monte Video*, where he sold her, being authorised so to do by the plaintiff's vendor. He had shipped a part of the proceeds of that sale in the United States' ship of war *Cyanne*, consigned to *George Law*, in *Baltimore*, who acted for the owners of the *Beauty*, as ship's husband. The object of the plaintiff's bill in the Court of Chancery in *Maryland*, was twofold ; first, to obtain possession of the money consigned to *Law;* and to effect this, *Law* and his partner *Harrison*, and *Anderson*, who, as *Law's* agent and attorney, received the money from *Capt. Elliot*, commander of the *Cyanne*, and the *Franklin Bank* of *Baltimore*, where the money was alleged to have been deposited, were

made parties to the bill; and by it, and an amended bill subsequently filed, they were severally put upon the discovery of the truth concerning the plaintiff's allegations touching the money shipped by the *Cyanne.* But so far as it related to *Odom,* the object of the bill was to obtain an account of the proceeds of sale and earnings of the schooner, and payment of a moiety thereof to the complainant, *McKim.* This is expressly stated to be the object by the Chancellor, in his order for publication, passed *September Term,* 1829, and this object was well understood and not objected to by *Odom.* On the 15*th* of *March,* 1831, by an order of the *Chancellor* of that date, the case was referred to an auditor, with directions to state such account as the nature of the case might render necessary, and such other accounts as either party might require. No objection was made to this procedure, although the defendant, *Odom,* had appeared in person and filed his answer, and was also represented by eminent counsel, one of whom is the present Chief Justice of the *United States.* On the coming in of the auditor's report, the defendant, *Odom,* excepted thereto, and to the account stated between him and the owners of the *Beauty.* The exceptions, twelve in number, allege sundry improper omissions, rejections, and erroneous charges, but at no time was it urged as an exception to the proceedings of either Chancellor or auditor, that the defendant was not required by the bill to account. We do not find in either the original or amended bill any particular prayer that *Odom* may be required to account; but there is, in the original bill, a general prayer, that such relief may be afforded in the premises as may seem right and just; and under this general prayer the proceedings against *Odom* are sustainable, even if the question were now open. It is usual to add to the prayer of the bill, a general prayer for that relief which the circumstances of the case may require, that if the plaintiff mistakes the relief to which he is entitled, the court may yet afford him that relief to which he has right. Considering the object of the bill against *Odom* to be what the Chancellor said it was, to obtain an account of the proceeds of sale and earnings of the schooner, and payment of a moiety thereof to the complainant, *McKim,* it was no usurpation, by the Court of Chancery, of the rights of common

McKim *v.* Odom.

law courts, to hold and exercise jurisdiction thereof. *Blackstone* says, courts of equity have acquired a concurrent jurisdiction with every other court in all matters of account, and as incident to accounts, they also take the concurrent jurisdiction of all dealings in partnership, and many other mercantile transactions ; and so of bailiffs, receivers, *factors and agents :* 3 *Bl. Com.* 437. In *Post* v. *Kimberly,* 9 *Johns.* 469, the court say, it by no means follows, even admitting the remedy complete at law, that the court of Chancery has not also jurisdiction. It cannot be denied, at this day, but that there are many subjects upon which courts of law and equity have concurrent jurisdiction. Matters of account form one class of this description of cases, with respect to which the court of Chancery has a very broad jurisdiction, as the course of proceeding in that court has been considered peculiarly well calculated for the settlement of accounts, if they are in any degree long and complicated. In *Ludlow* v. *Simond,* 2 *Caine's Cas. in Err.* 54, *Kent C. J.* said he should regret exceedingly that any opinion, which might be given by that court, should tend to embarrass the benign and well settled jurisdiction of Chancery in the unlimited cognizance of accounts. In *Ripple* v. *Ripple,* 1 *Rawle,* 389, the court say, " To the act of the court of another State, in holding jurisdiction of the subject matter, the maxim *omnia presumuntur rite esse acta,* is as applicable as it is to the judicial proceedings in our own State." The record of a judgment in a neighboring state is *prima facie* evidence that the court, by which it was rendered, had jurisdiction : *Shumway* v. *Stillman,* 4 *Cowen,* 292, and every presumption is in favor of the court which rendered the judgment. *Harrod* v. *Barretto,* 1 *Hall,* 155. The record before us, from the High Court of Chancery of *Maryland,* shows most clearly, that the case was within the jurisdiction of the Chancellor, and that, in exercising it, he usurped the jurisdiction of no other court.

Whether a court of Chancery be a court of record or not, we do not deem it material to inquire. It is understood to be the highest court in the State from which this record comes, as it is known to be usually in those governments where such tribunals are established. Neither the constitution of the *United States* nor the law of Congress make mention of courts of record. It

is alike unimportant whether a decree in Chancery be technically a judgment. " Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," is the language of the constitution; and they are to have such faith given to them in every court within the *United States,* as they have by law or usage in the courts of the State from whence they are taken. If there are "judicial proceedings" in courts of Chancery, and if such courts have records, (2 *Saund.* 23,) the constitution and law of the *United States* prescribe the faith and credit they shall receive, and the effect they shall have throughout the Union. No distinction is made between chancery and common law judgments. As said by the court, in *Dubois* v. *Dubois,* 6 *Cowen,* 496, " It is sufficient that a decree unappealed from is final. Debt will lie." In *Evans* v. *Tatem,* 9 *Serg. & Rawle,* the court say, " If it be objected that proceedings in chancery are not according to the course of the common law, the same objection lies against judgments of courts on the continent of *Europe,* where the proceedings are according to the civil law. To be sure, in case of a foreign judgment, the defendant is permitted to deny the original cause of action. But so likewise would the defendant, in the present case, have been permitted to enter into the merits of the original controversy, were it not for the constitution and laws of the *United States,* which forbid it. The objection, therefore, of being precluded from contesting the merits of the decree, does not lie against the action of debt, which in its nature did not preclude it, but against the constitution."

The only remaining question is, whether the plaintiff has declared in the proper form of action. He has brought assumpsit, and the defendant contends, that debt is the only proper remedy, and that assumpsit will not lie. It is laid down in the books as a settled principle, that when a party has a *security* of a higher nature he must found his action thereon, and as the law has prescribed different forms of actions on different securities, assumpsit cannot, in general, be supported when there has been an express contract under seal or of record, but the party must proceed in debt or covenant where the contract is under seal, or in debt or *scire facias,* if it be of record, even though the debtor, after such

contract were made, expressly promised to perform it : 1 *Chitt. Pl.* 94 ; 1 *Cowp.* 129 ; *Bull. N. P.* 128 ; *Toussaint* v. *Martinnant*, 2 *T. R.* 102. By the judgment the original debt is merged so that no action can be maintained thereon, and the party must resort to his highest remedy : 1 *Chitt. Pl.* 49, *et seq.* and the cases there cited. Debt is the proper remedy on records and judgments : 1 *Chitt. Pl.* 354 ; *Com. Dig. Debt, A.* 2. There are many cases to be found in the books, where assumpsit has been brought and held to lie on judgments, but they either were foreign judgments, or were treated as such. The cases of *Crawford* v. *Whittal, Sinclair* v. *Frazer, Plaistow* v. *Van Uxem*, and *Buchannan* v. *Rucker*, cited by the plaintiff's counsel, were all on foreign judgments. But *Ld. Mansfield* said, in *Walker* v. *Witter*, 1 *Doug.* 1, that *such* judgments were not specialties but only *prima facie* evidence of a simple contract debt ; the *prout patet per recordum* in the declaration was absurd, and the plea of *nul tiel record*, a mere nullity. So it was held in *Duplex* v. *De Roven*, 2 *Vern.* 540, that a judgment in *France* must be considered in *England*, as a debt by simple contract. The distinction will be found generally to run through all the cases, that where the judgment is to be received as conclusive, as are all domestic judgments, it is a specialty, and must be declared upon as such, but where the judgment is received as mere *prima facie* evidence, as is the case with all foreign judgments, the action may be assumpsit or debt.

There are several cases to be found in the reports where assumpsit has been sustained on judgments from other States, but in all these cases such judgments were treated as foreign judgments, and received merely as *prima facie* evidence of a simple contract debt. In *Hitchcock* v. *Aicken*, 1 *Caines*, 460, the Supreme Court of *New York* decided, that a judgment in a sister State is to be considered in the light of a foreign judgment, only *prima facie* evidence of a debt, and the consideration thereof examinable. While this continued to be law in *New York*, the judgments of other States were there treated merely as foreign judgments on which assumpsit would lie, and we, therefore, find the practice conforming to it. That case has been overruled, and the eminent and very distinguished jurist who turned the decision

in *Hitchcock* v. *Aicken,* is now a high authority that a judgment is conclusive in every other State, if a court of the particular State where it was rendered would hold it conclusive: 1 *Kent's Com.* 260. How much of the foundation of that Judge's argument against the decision in *Post* v. *Neafie,* is destroyed by the overruling of *Hitchcock* v. *Aicken,* it is unnecessary to inquire. Certain it is, that the decision in the latter case, against which *Thompson* J. argued with great power, was the only obstacle to *his* concurring in *Post* v. *Neafie.* Since the decisions in *Mills* v. *Duryee,* 7 *Cranch,* 481 ; *Hampton* v. *McConnel,* 3 *Wheat.* 234 ; *Bissel* v. *Briggs,* 9 *Mass.* 462, and *Borden* v. *Fitch,* 15 *Johns.* 121, there has been a uniformity of decision throughout the Union, and the judgments of the courts of the several States, when properly authenticated, are now put upon the same footing as domestic judgments. The consequence of this has been to change the effect of a judgment from another State, when offered as evidence. It is no longer received as mere *prima facie* evidence of a simple contract debt, but as conclusive, as evidence of incontrovertible verity of a specialty, the merits of which cannot be re-examined, and which, under the constitution of the *United States* and the law of Congress, is entitled to all the sanctity of a domestic judgment. On such a judgment assumpsit will not lie. The question has been distinctly settled in *New York.* In *Andrews* v. *Montgomery,* 19 *Johns.* 162, which was assumpsit on a judgment recovered in *New Jersey,* the Court decided that a judgment fairly obtained in another State is conclusive evidence of a debt, and that an action of assumpsit, therefore, will not lie on such a judgment. The same principle is recognised in *Benton* v. *Bergot,* 10 *Serg. & Rawle,* and *Garland* v. *Tucker,* 1 *Bibb,* 361.

We think that any court, which respects the decisions of the Supreme Court of the *United States,* in the cases above referred to, must come to the same conclusion.